UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

NOT FOR PUBLICATION

| | |
|---|---|
| LEGENDS MANAGEMENT CO., LLC, <br><br> Plaintiff, <br> v. <br><br> AFFILIATED INSURANCE COMPANY, <br><br> Defendant. | Civil Action No. <br><br> 2:16-CV-01608-SDW-SCM <br><br> **AMENDED AND SUPPLEMENTAL OPINION ON CROSS-MOTIONS TO COMPEL DISCOVERY** <br><br> **D.E. 49, 50, 91** |

**Steven C. Mannion**, United States Magistrate Judge.

Before this Court are informal cross motions compelling discovery withheld as privileged. Plaintiff Legends Management Company, LLC ("Legends") and Third-Party Defendant/Counterclaimant Metairie Corporation ("Metairie") (collectively, the "Legends Parties") and Defendant/Third-Party Plaintiff Affiliated FM Insurance Company ("Affiliated") respectively seek to compel documents withheld as privileged attorney-client communications and/or work product.[1] The Court heard oral arguments on March 8, 2017, May 19, 2017, and July 13, 2017. The Court also received a supplemental declaration on August 25, 2017.[2] Upon consideration of the submissions and oral arguments, and for the reasons set forth below, the Court **GRANTS IN PART AND DENIES IN PART** the Legends Parties' informal motion to compel, and **GRANTS** Affiliated's informal motion to compel.

---

[1] (ECF Docket Entry No. ("D.E.") 49, 50).

[2] (D.E. 90-1).

## I. BACKGROUND AND PROCEDURAL HISTORY[3]

The Legends Parties allege breach of contract under an insurance policy ("Policy") and bad faith denial of insurance claims by Affiliated from storm-related damage to property known as the Great Gorge Playboy Club and Seasons Hotel (the "Property").[4] Damage to the Property resulted from two[5] separate storm-related incidents which occurred in the Fall of 2011.[6] On February 6, 2012, Citizens Public Adjusters, Inc. ("Citizens"), retained by the Legends Parties to assist with the submission of the insurance claims, "first notified" Affiliated of the damage to the Property.[7] Notice was provided telephonically to FM Global, Affiliated's claims examiner.[8]

After notice of damage was provided, Affiliated assigned Steven Leider ("Mr. Leider") and David Lawson ("Mr. Lawson"), claims adjusters at FM Global, to investigate and adjust the claims, and determine whether there was coverage under the Policy.[9] During FM Global's initial post-claim inspection on March 1, 2012, it reportedly learned that the Property "had not been open to the general public for approximately three (3) years" and "that Legends, on behalf of itself and Metairie as owner of the property, had already demolished the first and second floors of the East

---

[3] The allegations set forth within the pleadings and motion record are relied upon for purposes of this motion only. The Court has made no findings as to the veracity of the parties' allegations.

[4] (D.E. 1-1, Compl. ¶ 2; D.E. 7, Third-Party Compl. ¶ 28).

[5] The Legends Parties initially reported three loss events but dropped the last claim.

[6] (D.E. 1-1, Compl. ¶ 1).

[7] (D.E. 49-1, Ex. A to Decl. of Henry Catenacci, Esq. ("Catenacci Decl.") at 6).

[8] (*Id.*).

[9] (D.E. 78-1, Decl. of Robert Brunelli, Esq. ("Brunelli Decl.") ¶ 3).

2

Wing."[10] Thereafter, in March 2012, Affiliated retained the law firm of Podvey Meanor as outside counsel "to provide legal opinions and legal advice regarding coverage issues relating to the claims . . . because it anticipated there would be legal issues with respect to various aspects of the claims."[11] Podvey Meanor is the former law firm of Henry Catenacci ("Mr. Catenacci"), counsel for Affiliated.[12] On March 19, 2012, Affiliated advised the Legends Parties by letter that it was investigating the insurance claims under a full reservation of rights.[13]

The Legends Parties retained Attorney Jonathan Wheeler ("Mr. Wheeler") in April 2013 following Affiliated's Notices of Examinations Under Oath, "akin to a deposition," to Legends' President[14] and later, Legends' Chief Engineer.[15] In addition to providing legal assistance in connection with the Examinations Under Oath, Mr. Wheeler was "retained to provide legal advice and counsel concerning the insurance coverage claims" and "Affiliated's handling and allegedly continued investigation of them."[16] Mr. Wheeler certifies that his involvement with the revised claims was entirely in a legal capacity.[17] For example, on March 7, 2014, Mr. Wheeler toured the Property with Legends Chief Engineer and a former general manager of Citizens, and took photographs to "develop an understanding of the areas of property damage that were [the] subject

---

[10] (D.E. 7, Third-Party Compl. ¶¶ 45-48).

[11] (D.E. 78-1, Brunelli Declaration ¶¶ 4-5).

[12] (*Id.* ¶ 5).

[13] (D.E. 7, Third-Party Compl. ¶ 50).

[14] (D.E. 54-1, Aff. of Jonathan Wheeler, Esq. ("Wheeler Aff.") ¶¶ 3, 6).

[15] (*Id.* ¶ 6).

[16] (*Id.*).

[17] (*Id.* ¶ 8).

3

of the insurance claims."[18] Following that visit, on April 15, 2014, Mr. Wheeler submitted a cover letter enclosing the Legends Parties' revised insurance claims to Mr. Catenacci.[19] The letter stated, in part: "[t]hese amended submissions were made based upon the reevaluation of the loss performed by myself, Dave Tassey and John Masucci of Citizens Public Adjusters."[20]

Affiliated denied coverage for the claims on July 21, 2014, and this suit followed.[21] After hearing oral arguments on March 8, 2017, May 19, 2017, and July 13, 2017, the remaining dispute concerns: (1) Affiliated's request to compel Mr. Wheeler's documents regarding his visit to the Property and communications about the revised claims between the period February 19, 2014 through April 15, 2014;[22] and (2) the Legends Parties' request to compel the documents of Podvey Meanor and Messrs. Leider and Lawson.[23] The parties respectively maintain that all non-privileged documents have already been produced and the withheld documents are protected from disclosure by the attorney-client privilege and/or work product doctrine. All withheld documents were submitted to the Court for *in camera* review.

## II. DISCUSSION & ANALYSIS

A party asserting a claim of privilege is obligated to provide a log of withheld documents which provides sufficient information "to assess the applicability of the privilege or protection."[24]

---

[18] (*Id.* ¶ 10).

[19] (*Id.* ¶ 12).

[20] (D.E. 49-1, Ex. F to Catenacci Decl. at 27).

[21] (*Id.* Ex. G at 32).

[22] (D.E. 49, Def.'s Br.).

[23] (D.E. 50-1, Pl.'s Br.).

[24] FED. R. CIV. P. 26(b)(5).

Consistent with this obligation, Affiliated and the Legends Parties provided privilege logs and submitted the documents for *in camera* review. The Court will address the matters challenged by each party by first analyzing the applicability of the attorney-client privilege followed by the work product doctrine. Lastly, the Court will briefly address documents withheld by Affiliated under New Jersey statute and regulation.

### A. Attorney-Client Privilege

The party invoking attorney-client privilege bears the burden of proving the privilege applies and must show: "(1) that it submitted confidential information to a lawyer, and (2) that it did so with the reasonable belief that the lawyer was acting as the party's attorney,"[25] and (3) that the purpose of the communications was to secure legal, as opposed to business, advice.[26] The Third Circuit has noted that federal courts narrowly construe the attorney-client privilege because it obstructs the truth finding process.[27] The "attorney-client privilege does not apply just because a statement was made by or to an attorney."[28] "The privilege protects only those disclosures – necessary to obtain informed legal advice – which might not have been made absent the privilege."[29]

---

[25] *Montgomery Acad. v. Kohn*, 50 F. Supp. 2d 344, 350 (D.N.J. 1999).

[26] *See Kelly v. Ford Motor Co.*, 110 F.3d 954, 965 (3d. Cir 1997) (internal citation omitted); *see also Beachfront N. Condo. Ass'n v. Lexington Ins. Co.*, No. 14-6706, 2015 U.S. Dist. LEXIS 102917, at *6 (D.N.J. Aug. 5, 2015).

[27] *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1423 (3d Cir. 1991) (internal citation omitted).

[28] *Beachfront N. Condo.*, 2015 U.S. Dist. LEXIS 102917, at *4.

[29] *Id.* (quoting *Westinghouse*, 951 F.2d at 1423-24).

Accordingly, "it is well-settled that when a client voluntarily discloses privileged communications to a third party, the privilege is waived."[30] However, if disclosure to a third party is necessary for the client to obtain informed legal advice, courts recognize exceptions to this rule.[31] The attorney-client privilege may therefore apply to communications between an attorney and an "agent"[32] even if the client is not a "direct participant."[33] It is well-settled that for purposes of the privilege, "agents that help facilitate attorney-client communications or [] legal representation" constitute "[p]rivileged persons."[34] On the other hand, an attorney who performs essentially "nonlegal duties" does not qualify as a "lawyer" for purposes of the privilege.[35] Thus, when the purpose of an attorney's investigation is "to prepare an insurance claim . . . the privilege does not apply."[36] At the same time, communications made to obtain legal advice do not necessarily lose protection of the privilege because they involve an insurance claim.[37]

---

[30] *Westinghouse*, 951 F.2d at 1424 (internal citation omitted).

[31] *Id.*

[32] *Id.* (quotation marks and internal citations omitted).

[33] *Beachfront N. Condo.*, 2015 U.S. Dist. LEXIS 102917, at *6 (citing *In re Grand Jury*, 705 F.3d 133, 160 (3d Cir. 2012)).

[34] *In re Grand Jury*, 705 F.3d at 160 (quoting *Teleglobe Commc'ns Corp. v. BCE*, 493 F.3d 345, 359 (3d Cir. 2007)).

[35] *Payton v. N.J. Tpke. Auth.*, 148 N.J. 524, 550-51 (1997) (internal citation omitted).

[36] *Id.*

[37] *See Reliance Ins. Co. v. Am. Lintex Corp.*, No. 00-5568, 2001 U.S. Dist. LEXIS 7140, at *6-7 (S.D.N.Y. May 31, 2001).

i. <u>Podvey Meanor's Files</u>[38]

The Legends Parties seek "[a]ny and all documents referring in any way to the claim[s] submitted to Affiliated on or behalf of Legends . . . including, without limitation, all Documents concerning Affiliated's investigation, handling, analysis, consideration, evaluation and response to such claim."[39] They believe Affiliated initially retained Podvey Meanor for claims investigative purposes in the course of Affiliated's "normal business operations" as evinced by the length of the investigation and correspondence between Mr. Catenacci (a former member of Podvey Meanor) and Affiliated's claims handler as early as October 8, 2013.[40] Thus, if Podvey Meanor assisted with the handling of claims, rather than providing legal services, the attorney-client privilege does not apply.[41]

With the exception of Podvey Privileged DNP 000279 and 000291, the Court finds that Affiliated has met its burden of establishing that the remaining documents identified in the privilege logs are protected from disclosure by the attorney-client privilege. Podvey Meanor was retained as outside counsel in March 2012.[42] The Declaration of Robert Brunelli, Esq. (hereinafter "Brunelli Declaration"), Vice President, Litigation Manager and Assistant General Counsel of

---

[38] Initially, the Legends Parties only sought Podvey Meanor's files. At oral argument, counsel made clear that the Legends Parties seek all relevant and withheld documents inclusive of the files of David Lawson and Steven Leider. For purposes of this Opinion, the Court refers to the three sets of documents as "Podvey Meanor" documents. The corresponding Order specifies what must be produced as to each bates stamped document pertaining to the files of Podvey Meanor, David Lawson, and Steven Leider.

[39] (D.E. 50-4, Ex. B to Cert. of Jennifer Black Strutt, Esq. ("Strutt Cert.") ¶ 8 at 11).

[40] (D.E. 50-1, Pl.'s Br. at 17-18).

[41] (*Id.*).

[42] (D.E. 78-1, Brunelli Decl. ¶ 5).

Affiliated, provides that Podvey Meanor's "sole role was to provide legal advice, opinions[,] and counsel" to Affiliated.[43] "At no time did Podvey Meanor or any of its attorneys conduct a physical examination of the . . . Property at issue" nor did they "perform a claims[] adjustment or measurement function concerning the Legends Parties' claims."[44] The veracity of the Brunelli Declaration is bolstered by the privilege logs' descriptions and the Court's *in camera* review which reveals that the communications exchanged between outside counsel at Podvey Meanor and in-house counsel at Affiliated FM (Mr. Brunelli) consist of legal advice regarding the extent of coverage, if any, under the Policy, and legal recommendations and opinions regarding the Examinations Under Oath. None of the documents at issue were generated during the regular course of Affiliated's claims investigation business. The Court finds that they are privileged and protected from disclosure.

While not argued by the Legends Parties, e-mails with multiple recipients do not alter the result or constitute waiver of the privilege. Of the documents at-issue, only Mr. Brunelli, Messrs. Leider and Lawson of FM Global, Affiliated's claims adjuster, and counsel at Podvey Meanor received the e-mails. Even if it was argued that FM Global, Affiliated's claims adjuster, did not qualify as the client but rather the "agent" for purposes of the privilege, the Court would still find that the privilege applies. What is dispositive is that in acting as Affiliated's "agent," FM Global sought legal, as opposed to business, advice.[45] In each instance, the redacted and withheld documents contain confidential communications made for the purpose of securing legal advice

---

[43] (*Id.*).

[44] (*Id.* ¶ 9).

[45] *See Westinghouse*, 951 F.2d at 1424 (quotation marks and internal citations omitted); *see also Kelly*, 110 F.3d at 965 (internal citation omitted); *Beachfront N. Condo.*, 2015 U.S. Dist. LEXIS 102917, at *6.

regarding existing as well as potential issues with respect to the claims. Contrary to the Legends Parties' position, the communications concern legal advice and do not lose the protection of the privilege merely because they involve an insurance claim.[46]

The Court also finds that three e-mails authored by Peter Kahn ("Mr. Kahn"), a forensic accountant retained by Podvey Meanor to assist in providing legal advice, are privileged. Communications exchanged with consultants are not automatically privileged just because in-house or outside counsel is "copied in" on correspondence; however, "if the express purpose of the communication was to relay information for the purpose of seeking legal advice . . . the privilege attach[es]."[47] Based on *in camera* review, in-house and outside counsel were not merely "copied in" on the communications. The "express purpose" of Mr. Kahn's e-mails was to relay his accounting expertise and allow Podvey Meanor to render legal assistance as to existing and potential coverage issues arising from the Legends Parties' insurance claims. In other words, Mr. Kahn's e-mails were sent in confidence "to relay information for the purpose of seeking legal advice." For these reasons, the redacted and withheld documents authored by Mr. Kahn are privileged from disclosure.

---

[46] *See Reliance Ins. Co.*, 2001 U.S. Dist. LEXIS 7140, at *6-7.

[47] *See In re G-I Holdings, Inc.*, 218 F.R.D. 428, 436 (D.N.J. 2003) (internal citation omitted). While not implicated in this case, the privilege also extends, under limited circumstances, to communications between an accountant and a client "when the accountant functions as a 'translator' between the client and the attorney." *Id.* at 434 (quoting *United States v. Kovel*, 296 F.2d 918, 921 (2d Cir. 1961)). In this role, the accountant "must act as a 'go between[]' to assist the communication between a client and an attorney." *Id.* at 435. Again, for the privilege to attach, it is "vital . . . that the communication be made in confidence for the purpose of obtaining legal advice from the lawyer." *Id.*

9

ii. <u>Attorney Wheeler's Files</u>

Affiliated seeks to compel "Mr. Wheeler's files relating to his inspection of the property, re-evaluation of the claim submissions[,] and preparation of or input into the revised or amended submissions on April 15, 2014. The documents sought are also limited to a less than (2) month time period, from February 19, 2014 through the date of the amended submissions on April 15, 2014."[48] The issue is whether Mr. Wheeler's files between February 19, 2014 and April 15, 2014 show that he was providing legal advice, or alternatively, preparing the revised insurance claims for submission to Affiliated in which case the documents are not privileged.

While Mr. Wheeler certifies that he was retained to provide legal assistance to the Legends Parties in connection to the Examinations Under Oath and that his "involvement with the revised submission was entirely in a legal capacity,"[49] the Court finds his statements are wholly conclusory and that the documents at issue are not protected by attorney-client privilege. The record before the Court, including Mr. Wheeler's certified statement and an *in camera* review of the documents, shows that Mr. Wheeler acted in a non-legal capacity when he evaluated the Property and prepared and submitted the revised claims. Thus, the attorney-client privilege does not apply. The remaining communications were otherwise made to confirm travel arrangements and witness availability and are not privileged.[50]

Moreover, *in camera* inspection of Mr. Wheeler's April 15, 2014 letter demonstrates that he communicated with employees of Citizens to assist with revising and submitting the insurance

---

[48] (D.E. 49, Def.'s Br. at 2-3).

[49] (D.E. 54-1, Wheeler Aff. at ¶¶ 5-6, 13).

[50] An e-mail labeled Wheeler 0001173 was previously sent to opposing counsel at Podvey Meanor and cannot now be withheld as privileged.

10

claims, and that his March 7, 2014 visit to the Property with Legends Chief Engineer and subsequent conversations with him formed an integral function in revising the claims at issue. The "attorney-client privilege does not apply just because a statement was made by or to an attorney."[51] In this role, Mr. Wheeler performed a business duty, not a legal one, and the attorney-client privilege does not apply.

### B. Work Product Doctrine

Under Rule 26(b)(3), the work product doctrine protects "documents and tangible things . . . prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)."[52] A litigant who invokes the work-product protection bears the burden of proving both that the withheld documents were prepared because "of reasonably anticipated litigation" and that the documents were not prepared for any other purpose.[53] Generally, "a party must show more than a 'remote prospect,' and 'inchoate possibility,' or a 'likely chance of litigation.'"[54] "Rather, a party must show that there existed 'an identifiable specific claim of impending litigation when the materials were prepared.'"[55] "The mere involvement of, consultation with, or investigation by an attorney does not, in itself, evidence the 'anticipation of litigation.'"[56]

---

[51] *Beachfront N. Condo.*, 2015 U.S. Dist. LEXIS 102917, at *4; *see also Westinghouse*, 951 F.2d at 1423-24 (internal citation omitted).

[52] *Id.* at 662 (citing FED. R. CIV. P. 26(b)(3)).

[53] *Beachfront N. Condo.*, 2015 U.S. Dist. LEXIS 102917, at *11-12 (internal citation omitted).

[54] *In re Gabapentin Patent Litig.*, 214 F.R.D. 178, 183 (D.N.J. 2003) (internal citation omitted).

[55] *Id.*

[56] *Id.*; *see also Taroli v. General Elec. Co.*, 114 F.R.D. 97, 98 (N.D. Ind.1987).

"The work product doctrine is distinct from and broader than the attorney-client privilege."[57] Compared to the attorney-client privilege, "disclosure to a third party does not necessarily waive the protection of the work-product doctrine."[58] The work product doctrine's "protection extends beyond materials prepared by an attorney to include materials prepared by an attorney's agents and consultants."[59]

At the same time, "the work product doctrine is not an absolute bar to discovery of materials prepared in anticipation of litigation."[60] Upon a showing of "substantial need" and "undue hardship," work prepared in anticipation of litigation by an attorney or his agent is discoverable.[61] However, "'core' or 'opinion' work product that encompasses the 'mental impressions, conclusions, opinion, or legal theories of an attorney or other representative of a party concerning the litigation'" is "discoverable only upon a showing of rare and exceptional circumstances."[62] Neither underlying facts[63] nor documents prepared in the ordinary course of business are protected by the work product doctrine.[64] Similarly, documents prepared for purposes other than litigation that are useful in subsequent litigation are not protectable work product.[65]

---

[57] *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 666 (3d Cir. 2003) (internal citation omitted).
[58] *Westinghouse*, 951 F.2d at 1428.

[59] *In re Cendant*, 343 F.3d at 662.

[60] *Id.* at 663.

[61] *Id.* (citing FED. R. CIV. P. 26(b)(3)).

[62] *Id.* (noting that opinion work product is "generally afforded near absolute protection from discovery").

[63] *Ford Motor Co. v. Edgewood Properties, Inc.*, 257 F.R.D. 418, 422 (D.N.J. 2009).

[64] *United States v. Rockwell Int'l*, 897 F.2d 1255, 1265-66 (3d Cir. 1990) (internal citation omitted); *see also In re Gabapentin*, 214 F.R.D. at 184.

[65] *Id.*

In cases involving insurance claims, determining the trigger date for the work product doctrine's application is especially difficult because investigating and evaluating claims is the routine business of insurance companies.[66] As a result, some courts have declined to find communications between insured and insurers protected by work product prior to a coverage decision.[67] Other courts have adopted a case-by-case approach and consider factors such as "whether the parties were still jointly exploring ways to resolve their differences; whether either party had declared a definite position or both were still considering their positions; whether, once a position was declared, what was done would have been done for business purposes, regardless of the possibility of litigation; and what the parties' routine business practice of investigation was."[68] "While not determinative, an insurer's referral of a claim to its attorney [may also be] a significant factor in determining when the insurer anticipates litigation."[69] Third Circuit courts "have adopted a case by case approach."[70]

---

[66] *See Mount Vernon Fire Ins. Co. v. Try 3 Bldg. Servs., Inc.*, No. 96-5590, 1998 WL 729735, at *5 (S.D.N.Y. Oct. 16, 1998); *see also Westwood Prods. v. Great Am. E&S Ins. Co.*, No. 10-3605, 2011 U.S. Dist. LEXIS 84171, at *35-36 (D.N.J. Aug. 1, 2011) (internal citation omitted).

[67] *See Mount Vernon Fire*, 1998 WL 729735, at *6; *Linde Thomson Langworthy Kohn & Van Dyke, P.C. v. Resolution Trust Corp.*, 5 F.3d 1508, 1515 (D.C. Cir. 1993).

[68] *Halpin v. Barnegat Bay Dredging Co.*, No. 10-3245, 2011 U.S. Dist. LEXIS 68828, at *46-47 (D.N.J. June 27, 2011) (citing *St. Paul Reinsurance Co. v. Commercial Fin. Corp.*, 197 F.R.D. 620, 635 (N.D. Iowa 2000), *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 190 F.R.D. 532, 537-38 (S.D. Ind. 1999)).

[69] *Mount Vernon Fire*, 1998 WL 729735, at *7.

[70] *Westwood Prod.*, 2011 U.S. Dist. LEXIS 84171, at *39; *see also Halpin*, 2011 U.S. Dist. LEXIS 68828, at *49-50.

i. Podvey Meanor's Documents

Affiliated maintains that a number of withheld documents are protected from disclosure by the work product doctrine. In support, the Brunelli Declaration provides that Affiliated "anticipated there would be legal issues with respect to various aspects of the claims" in March 2012 and retained Podvey Meanor as a result.[71] In opposition, the Legends Parties argue the work product doctrine does not extend to Podvey Meanor's work as a claims handler or adjuster prior to the July 21, 2014 denial of claims.[72] Previously, Affiliated certified that it retained Podvey Meanor in March 2012 "because it anticipated there would be legal issues with respect to various aspects of the claims."[73] When asked to clarify, at oral argument on July 13, 2017, Mr. Catenacci stated that Affiliated anticipated litigation upon receipt of the Legends' Parties revised claims on April 15, 2014. The revised claims differed from the initial submission by millions of dollars.

While Podvey Meanor was retained in March 2012, this fact is not dispositive of whether Affiliated "anticipated litigation" at that time. Neither is its reservation of rights letter dated March 19, 2012. This letter did not contain any threat of litigation nor did Affiliated immediately deny coverage. "[A]t a certain point an insurance company's activity shifts from the ordinary course of business to anticipation of litigation."[74] Here, *in camera* inspection of the withheld documents shows that Affiliated anticipated litigation following the submission of revised claims by the Legends Parties on April 15, 2014. Prior to this time, Affiliated had yet to take a position on the

---

[71] (D.E. 78-1, Brunelli Decl. ¶ 4).

[72] (*See* D.E. 50-1, Pl.'s Br. at 12).

[73] (D.E. 78-1, Brunelli Declaration ¶¶ 4-5).

[74] *See Mount Vernon Fire*, 1998 WL 729735, at *6 (quoting *Fine v. Bellefonte Underwriters Ins. Co.,* 91 F.R.D. at 420, 422 (S.D.N.Y. 1981).

14

claims and Podvey Meanor continued to provide legal advice in connection to coverage issues. The following investigative reports or other documents prepared prior to April 15, 2014 are therefore not entitled to work product protection: Lawson 000005-000008; Lawson 000009-0000012; Podvey 000001-000004. However, these documents are protected by attorney-client privilege and shall not be produced. Reports and other documents prepared after April 15, 2014 forward are protected by the work-product doctrine and shall not be produced.

    ii.    Attorney Wheeler's Documents

Based upon review of the motion record and documents submitted for *in camera* review, the Court finds that the Legends Parties cannot meet their burden of establishing that the work product doctrine applies to the Wheeler documents. The Legends Parties contend that they anticipated litigation as of April 2013 based upon when they retained Mr. Wheeler,[75] the length of Affiliated's investigation, its "hostile tone," and the notice of intent to examine Legends' President under oath.[76]

The Legends Parties arguments are unavailing. As previously noted, retaining counsel is not determinative of when a party anticipates litigation.[77] There is to nothing to suggest that the length of Affiliated's investigation, its allegedly "hostile tone," or the notices to examine Legends executives under oath triggered the anticipation of litigation. While an insurer's reservation of rights letter has been found to trigger the work product doctrine, the Legends Parties do not even make this argument.[78] Even if they did, Affiliated's March 19, 2012 reservation of rights letter

---

[75] (D.E. 54-1, Wheeler Aff. ¶ 3).

[76] (D.E. 54-2, Aff. of Hillel Meyers ("Meyers Aff.") ¶¶ 5-6).

[77] *See Mount Vernon Fire*, 1998 WL 729735, at *7.

[78] *Id.* at *8.

made litigation a "remote prospect" and "inchoate possibility" which is insufficient to demonstrate the "anticipation of litigation."[79] Furthermore, Affiliated did not take a clear position on the insurance claims until it denied coverage on July 21, 2014.[80] Even if the Legends Parties anticipated litigation prior to the denial letter, it was only plausible *after* submission of the revised claims on April 15, 2014. Prior to this date, the Legends Parties had not "declared a definite position or . . . were still considering their position[]" on the claims.[81] It is therefore implausible to find that litigation was anticipated as early as April 2013.

Here, the evidence establishes that the Legends Parties could not have anticipated litigation until July 21, 2014 – when Affiliated denied coverage of the claims. Because the Court finds that only two documents (Wheeler 0001181-82 and 0001192) even implicate the work product doctrine and are dated March 2014, prior to the submission of the revised claims, establishing a work product trigger date is unnecessary.[82] Even so, the Court's *in camera* review reveals that the documents authored by Mr. Wheeler were prepared in the ordinary course of his claims investigation business and cannot now be protected as work product because they are useful in this case.[83] While they may contain Mr. Wheeler's mental impressions and opinions, they were not created in anticipation of litigation, and the work product doctrine does not apply. The Legends

---

[79] *In re Gabapentin*, 214 F.R.D. at 183 (internal citation omitted).

[80] (D.E. 49-1, Ex. G to Catenacci Decl. at 32).

[81] *See Halpin*, 2011 U.S. Dist. LEXIS 68828, at *46-47 (internal citation omitted); *Goodyear Tire & Rubber Co.*, 190 F.R.D. at 537-38.

[82] The remaining documents contain underlying facts which are not protected by the work product doctrine. *See Ford*, 257 F.R.D. at 422.

[83] *See In re Gabapentin*, 214 F.R.D. at 184.

Parties shall therefore produce all withheld Wheeler documents as neither the attorney-client privilege nor work product doctrine applies.

### C. New Jersey Statutory and Regulatory Protection

Lastly, the Legends Parties seek production of a letter and claim fraud referral forms Affiliated submitted to New Jersey's Office of Insurance Fraud Prosecutor ("OIFP"). Affiliated's privilege log indicates that the documents are being withheld pursuant to statutory authority, *N.J.S.A.* 17:33A-11; regulatory authority, *N.J.A.C.* 11:16-6.11, and the State Deputy Attorney Genery's non-disclosure request applicable to insurance companies.

Under the relevant statute, "[p]apers, documents, reports, or evidence relative to the subject of an investigation . . . shall not be subject to public inspection." [84] Likewise, New Jersey regulation provides that "[a]ll information and materials in the possession of the OIFP concerning the possibility of the existence or occurrence of insurance fraud or related criminal activities are confidential and privileged against disclosure, and shall not be deemed public records." [85] The purpose of the regulation is "to protect the public interest in the prosecution of insurance fraud."[86] In *Parkway Insurance Co. v. Hernandez*,[87] the court was asked to determine whether the OIFP could be compelled, pursuant to a subpoena *duces tucem*, to produce documents submitted by plaintiff regarding a fraud investigation into defendant's submitted claims. The court found that the OIFP was not required to produce the confidential documents due, in part, to a concern that

---

[84] N.J. STAT. § 17:33A-11.

[85] N.J. ADMIN. CODE § 11:16-6.11.

[86] *Id.*

[87] No. MRS-L-961-97, 1999 WL 33944690, at *5 (N.J. Super. Ct. Law Div. Apr. 15, 1999).

17

"premature disclosure of the information" would taint or prejudice the ongoing investigation.[88] The court also found defendant's position of alternatively obtaining the files from the plaintiff rather than from the OIFP, untenable as this would "circumvent and nullify the statute."[89]

In this case, bates stamped documents Leider Privileged DNP 000161-000193 are confidential and prohibited from disclosure under New Jersey statute and regulation if there is an ongoing fraud investigation by the OIFP. The Court requested that Affiliated obtain confirmation from the State of New Jersey as to whether an investigation is open or not.

Affiliated then filed a Declaration from Investigator Wilbert Sowney from the New Jersey State Department of Banking and Insurance, Bureau of Fraud Deterrence, who confirmed that a civil fraud investigation is pending against Legends.[90] Therefore, as in *Parkway*, ordering disclosure via Affiliated would "circumvent and nullify the statute" and could further taint or prejudice the investigation. For these reasons, the Legends Parties' motion to compel Affiliated to produce Leider Privileged 000161-000193 is denied.

### III.  CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the Legends Parties' informal motion to compel, and **GRANTS** Affiliated's informal motion to compel. An appropriate Order follows.

---

[88] *Id.* at *1.

[89] *Id.* at *3.

[90] (D.E. 90-1).

**ORDER**

1. The Legends Parties motion to compel is **GRANTED IN PART** and **DENIED IN PART** as follows:

    a. **GRANTED** as to documents labeled Podvey 000279; 000291 as neither the attorney-client privilege nor the work product doctrine applies. Affiliated shall produce complete copies of documents Podvey 000279 and 000291 within fourteen (14) days of this Opinion and Order.

    b. **DENIED** as privileged attorney-client communications and the following documents need not be produced:

        i. Podvey Privileged 000001-000004; 000003 and e-mail chain; 000005-000006; 000043 and e-mail chain; 000045 and e-mail chain; 000047; 000049; 000178; 000276; 000007; 000009-18; 000020-21; 000019;

        ii. Leider Privileged 000015; 000572; 000275; 000798; 000804; 000899; 000902; 000902; 000994 and e-mail chain; 001061; 001098 and e-mail chain; 001214-1215; 000001-000002; 000003-000004; 000005-000006; 000007-000009; 000010-000012; 000013-000016;000017-000018; 000019-000020; 000021-000022; 000023-000024; 000025; 000026-000034; 000035-000051; 000052-000065; 000066-000067; 000068-000069; 000070-000078; 000079-000080; 000081-000083; 000084-000086; 000087-000089; 000090-000091;

        iii. Lawson Privileged 000563; 000572; 000571; 000586; 000001-000002; 000003-000004; 000005-000008; e-mail chain 000009-000012; 000013-000016; 000017; 000018-000034; 000037;000038-000147; and 000148-000160.

    c. **DENIED** as protected work product for documents created after April 15, 2014, and as attorney-client privileged:

        i. Podve**y** Privileged 000052; 000054; 000056; 000007-8

        ii. Leider Privileged 00105; 0001216-1217; 000052-000065;

        iii. Lawson Privileged 000593 and e-mail chain; 000035-000036; and 000498-00499.

    d. **DENIED** as protected confidential information for documents marked Leider Privileged 000161-000193; and

2. Affiliated's motion to compel is **GRANTED** and the Legends Parties shall produce all withheld Wheeler documents as neither the attorney-client privilege nor the work product doctrine applies. The Legends Parties shall produce complete copies of all withheld Wheeler documents within fourteen (14) days of this Opinion and Order; and

3. The Courts prior Opinion and Order filed on August 22, 2017 are hereby vacated.[91]

    **IT IS SO ORDERED**.



Honorable Steve Mannion, U.S.M.J.
United States District Court,
for the District of New Jersey
phone: 973-645-3827

9/22/2017 9:53:39 AM

Original: Clerk of the Court
Hon. Susan D. Wigenton, U.S.D.J.
cc: All parties
    File

---

[91] (D.E. 88).